UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BENJAMIN NELSON,

    Plaintiff,

v.                            CASE NO.:

SYNCHRONY BANK,        **DEMAND FOR TRIAL BY JURY**

    Defendant.
_____/

## COMPLAINT

Plaintiff, Benjamin Nelson (hereinafter "Plaintiff"), by and through the undersigned counsel, and sues Defendant, Synchrony Bank (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## INTRODUCTION

1. Plaintiff alleges violation(s) of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

6. Likewise, the FCCPA is designed and adopted to reinforce individual consumers' rights.

## JURISDICTION AND VENUE

7. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, attorney fees and costs.

8. Jurisdiction and venue for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

9. Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

10. Venue is proper in this District as Plaintiff was a resident in this District, the violations described in this Complaint occurred in this District, and, Defendant transacts business within this District.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Charlotte County, Florida.

12. Plaintiff is a "consumer" as defined in Fla. Stat. § 559.55(8).

13. Defendant is a person collecting an alleged obligation which arises out of personal, family or household transactions.

14. The alleged debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6), as it arises from personal, family or household transactions.

15. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

16. Defendant is a financial entity attempting to collect an alleged consumer debt from Plaintiff.

17. Defendant is a financial entity with its principal place of business located at 170 West Election Road, Suite 125, Draper, Utah 84020 and conducts business within the State of Florida.

18. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue, (239) XXX-4037 (hereinafter "cellular telephone"); and was the called party and recipient of Defendant's hereafter described calls.

19. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, beginning in or about November 2015 through February 2016, with such frequency as can reasonably be expected to harass and in an effort to collect an alleged consumer debt.

20. Defendant's calls to Plaintiff continued, on average, three times per day.

21. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

22. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

23. Beginning in or about November 2015, Defendant began bombarding Plaintiff's cellular telephone in an attempt to collect an alleged consumer debt.

24. Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the telephone number 330-433-5966.

25. Upon Plaintiff's receipt of one such call from Defendant, in or about November 2015, Plaintiff answered the call, received Defendant's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to his cellular telephone; furthermore, Plaintiff informed Defendant's aforementioned agent/representative that its incessant calls were harassing him and demanded Defendant immediately cease all calls to his cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendant's Autodialer, predictive dialer, artificial voice or prerecorded message.

26. During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

27. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was done so after Plaintiff explicitly revoked consent and without his express consent.

28. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was knowingly and willfully placed to his cellular phone without express consent.

29. Each of the Plaintiff's requests for the harassment to end went ignored.

30. Defendant called Plaintiff on his cellular telephone in excess of one hundred (100) times since November 2015 in attempt to collect an alleged consumer debt.

31. Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call he received from Defendant; however, the following is a sample of calls Plaintiff received from December 2015 through January 2016;

   i. Two calls on December 4, 2015 at 5:54 p.m. and 8:51 p.m.;
   ii. Two calls on December 8, 2015 at 8:34 a.m. and 11:51 a.m.;
   iii. One call on December 10, 2015 at 7:11 p.m.;
   iv. Three calls on December 12, 2015 at 8:51 a.m., 10:50 a.m., and 2:26 p.m.;
   v. Two calls on December 13, 2015 at 9:47 a.m. and 5:34 p.m.;
   vi. Two calls on December 14, 2015 at 1:47 p.m. and 5:18 p.m.;

    vii.    Three calls on December 16, 2015 at 8:17 a.m., 1:33 p.m., and 2:46 p.m.;

    viii.    Three calls on December 18, 2015 at 8:38 a.m., 9:40 a.m., and 5:08 p.m.;

    ix.    Two calls on December 22, 2015 at 10:56 a.m. and 6:55 p.m.;

    x.    Four calls on December 23, 2015 at 9:02 a.m., 11:27 a.m., 5:29 p.m., and 8:15 p.m.;

    xi.    Two calls on December 24, 2015 at 9:33 a.m. and 11:47 a.m.;

    xii.    Three calls on December 26, 2015 at 9:55 a.m., 10:29 a.m., and 2:51 p.m.;

    xiii.    Four calls on December 27, 2015 at 8:02 a.m., 10:54 a.m., 12:04 p.m., and 2:41 p.m.;

    xiv.    Four calls on December 28, 2015 at 8:35 a.m., 1:33 p.m., 4:27 p.m., and 6:46 p.m.;

    xv.    Four calls on December 29, 2015 at 12:50 p.m., 2:12 p.m., 4:52 p.m., and 8:08 p.m.;

    xvi.    Three calls on December 30, 2015 at 10:52 a.m., 1:12 p.m., and 3:16 p.m.;

    xvii.    Four calls on December 31, 2015 at 8:07 a.m., 11:17 a.m., 3:30 p.m., and 5:05 p.m.;

    xviii.    Three calls on January 2, 2016 at 9:31 a.m., 10:46 a.m., and 2:35 p.m.;

xix. Two calls on January 3, 2016 at 9:11 a.m. and 11:08 a.m.;

xx. One call on January 4, 2016 at 8:26 a.m.;

xxi. Two calls on January 5, 2016 at 2:04 p.m. and 6:15 p.m.;

xxii. Two calls on January 6, 2016 at 1:16 p.m. and 6:09 p.m.;

xxiii. Four calls on January 7, 2016 at 8:49 a.m., 10:20 a.m., 11:32 a.m., and 5:51 p.m.;

xxiv. Three calls on January 8, 2016 at 11:47 a.m., 5:08 p.m., and 6:38 p.m.;

xxv. Three calls on January 9, 2016 at 9:27 a.m., 10:42 a.m., and 3:55 p.m.;

xxvi. One call on January 10, 2016 at 1:45 p.m.;

xxvii. Four calls on January 11, 2016 at 2:31 p.m., 3:57 p.m., 5:21 p.m., and 6:43 p.m.;

xxviii. Four calls on January 12, 2016 at 8:57 a.m., 10:38 a.m., 11:54 a.m., and 5:34 p.m.;

xxix. One call on January 13, 2016 at 5:13 p.m.;

xxx. Four calls on January 14, 2016 at 10:52 a.m., 1:41 p.m., 6:02 p.m., and 8:35 p.m.;

xxxi. Three calls on January 15, 2016 at 7:25 a.m., 10:31 a.m., and 7:31 p.m.;

xxxii. One call on January 16, 2016 at 11:16 a.m.;

xxxiii. Three calls on January 18, 2016 at 11:26 a.m., 2:16 p.m., and 5:06 p.m.;

xxxiv. Two calls on January 20, 2016 at 8:18 a.m. and 5:22 p.m.;

xxxv. Three calls on January 21, 2016 at 9:55 a.m., 11:54 a.m., and 8:27 p.m.; and

xxxvi. Two calls on January 22, 2016 at 2:09 p.m. and 8:44 p.m.

32. Defendant has, or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

33. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call his cellular telephone.

34. Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's call list.

35. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

36. Defendant's corporate policies and procedures provided no means for Plaintiff to have his cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

37. Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

38. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

39. Defendant has numerous complaints against it, across the country, asserting that its Autodialer continues to call individuals who have revoked consent to be called by Defendant.

40. Plaintiff expressly revoked consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone number by the use of an Autodialer or an artificial voice or prerecorded message immediately upon Defendant's placement of the calls.

41. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

42. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

43. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

44. None of Defendant's telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

45. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

46. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of her time. The time

Plaintiff spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

47. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

48. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely her cellular telephone and cellular telephone services.

49. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy. Plaintiff also suffered from stress, anxiety, hypertension, emotional distress and mental distress, angina, and headaches. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, and privacy. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

50. Plaintiff incorporates and realleges paragraphs one (1) through forty-nine (49) as if fully set forth herein.

51. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that he wished for the calls to immediately cease.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

53. Plaintiff re-alleges and fully incorporates Paragraphs one (1) through forty-nine (49) above as if fully stated herein.

54. At all times relevant to this action, Defendant is subject to and must abide by the law of the State of Florida, including, without limitation, Fla. Stat. § 559.72.

55. Defendant violated Fla. Stat. §559.72(7) by willfully engaging in conduct with such frequency as can reasonably be expected to harass the debtor.

56.  Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Fla. Stat. § 559.77.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

_____
Jared M. Lee, Esquire
Florida Bar No #:  0052284
Morgan & Morgan, Tampa P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Tele:  (407) 420-1414
Fax:  (407) 245-3485
JLee@ForThePeople.com
KVanBuskirk@ForThePeople.com
MHoilett@ForThePeople.com
Counsel for Plaintiff