UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BENJAMIN NELSON,

    Plaintiff,

v.

SYNCHRONY BANK,

    Defendant.

Civil Action No. 16-cv-00703-UA-MRM

## DECLARATION OF MARTHA KOEHLER

I, Martha Koehler, declare as follows:

1. I am a Manager of Litigation Support employed by Synchrony Bank ("Synchrony"). My responsibilities include regularly providing research and support assistance for claims and litigation involving Synchrony. I have performed these responsibilities for Synchrony and its predecessors since 1994. The facts stated herein are true and correct and based upon my own personal knowledge and/or upon my personal review of Synchrony's business records pertinent to this matter. If called as a witness to testify, I could and would competently testify to the facts set forth herein.

2. Synchrony is a federal savings association that, among other things, issues credit card accounts to consumers. Synchrony is regulated, supervised and examined by the Office of the Comptroller of the Currency.

3. Synchrony's charter home office is located at 170 Election Road, Draper, Utah.

4. My responsibilities include regularly accessing Synchrony's cardholder records, maintaining and compiling histories of cardholder terms and conditions, and investigating account records and transaction histories including communications to and from customers. I am familiar with the manner in which credit card account records and account agreements are maintained and the manner in which mailings are sent to Synchrony cardholders.

5. In the ordinary course of its regularly conducted business, Synchrony maintains electronic records related to each account. These records are made at or about the time of the events reflected in each record. Among other things, these records enable Synchrony to determine when an individual becomes a cardholder, if and when a cardholder's account becomes overdue, if and when debt collection activities commence on the account, and when cardholder agreements and changes in terms of cardholder agreements are sent to customers. Synchrony relies on these electronic records in the ordinary course of managing and servicing its customers' accounts. I believe these records to be accurate and reliable.

6. Synchrony has a number of credit card programs, including a program affiliated with JCPenney. Under the JCPenney Program, Synchrony issues JCPenney-branded credit card accounts. This program allows a consumer to pay for goods and services using a branded credit card. I have personally reviewed Synchrony's records pertaining to Plaintiff Benjamin Nelson and found that he was the accountholder for the JCPenney-branded account ending 1501 (the "JCPenney Account") issued by Synchrony. My statements in this declaration regarding the JCPenney Account are based on my personal review of these business records.

7. Synchrony's records reflect that on January 5, 2013, an application for a JCPenney-branded credit card account was submitted at the JCPenney store located at the Edison Mall in Fort Myers, Florida, in the name of Benjamin Nelson. On the same day, Synchrony approved the application, which is reflected in the "JCPenney Application Profile", of which a true and correct copy is attached as **Exhibit 1** (redacted to protect Nelson's personal information). The account number assigned to the JCPenney Account was XXXXXXXXXXXX1501.

8. A JCPenney-branded credit card and a copy of the complete JCPenney Credit Card Account Agreement (the "JCPenney Agreement") were mailed to Mr. Nelson at the address provided on the application of 30209 Balsam Blvd, Punta Gorda, FL 33982. A true and correct copy of the JCPenney

3

Agreement is attached as **Exhibit 2**. Synchrony has no record of any postal returns on the JCPenney Account.

9. Mr. Nelson's first Statement was sent via United States mail on or around January 16, 2013, to 30209 Balsam Blvd, Punta Gorda, FL 33982. Subsequent Statement notices were also sent via United States mail to this address. Synchrony has no record of any mail being returned as undeliverable for the JCPenney Account.

10. Purchases were charged to the JCPenney Account on various dates, and payments were posted to the JCPenney Account. Attached hereto as **Exhibit 3** is a true and correct copy of the relevant Statements.

11. Synchrony's records reflect that the last payment posted to the JCPenney Account was on November 24, 2015. The Statement reflecting the last payment on the JCPenney Account is attached hereto as **Exhibit 4.**

12. Due to nonpayment, the JCPenney Account balance of $1,285.10 was charged off on May 20, 2016. At the time of charge-off, the JCPenney Agreement was still the effective agreement governing the JCPenney Account.

13. As part of Synchrony's regular activities in the ordinary course of business, Synchrony maintains a record of any correspondence received from its customers, including requests to reject or opt out of an arbitration provision. I have reviewed Synchrony's records and have found no record of a notice from Mr.

4

Nelson exercising his right to reject the "Arbitration Provision" in the JCPenney Agreement.

14. Synchrony also has a credit card program affiliated with Walmart. Under the Walmart Program, Synchrony issues Walmart-branded credit card accounts. This program allows a consumer to pay for goods and services using a branded credit card. I have personally reviewed Synchrony's records pertaining to Plaintiff Benjamin Nelson and found that he was the accountholder for the Walmart-branded account ending 8007 (the "Walmart Account") issued by Synchrony. My statements in this declaration regarding the Walmart Account are based on my personal review of these business records.

15. Synchrony's records reflect that on December 3, 2011, an application for a Walmart-branded credit card was submitted at the Port Charlotte, FL. Walmart SuperCenter in the name of Ben Nelson. On the same day, Synchrony approved the application, which is reflected in the "Walmart Application Profile", of which a true and correct copy is attached as **Exhibit 5** (redacted to protect Nelson's personal information). The account number assigned to the Walmart Account was XXXXXXXXXXXX8007.

16. A Walmart-branded credit card and a copy of the complete Walmart Credit Card Account Agreement (the "Walmart Agreement") were mailed to Mr. Nelson at the address provided on the application of 17495 Boca Vista Rd Apt 6,

5

Punta Gorda, FL 33955. A true and correct copy of the Walmart Agreement is attached as **Exhibit 6.** Synchrony has no record of any postal returns on the Walmart Account.

17. Mr. Nelson's first Statement was sent via United States mail on or around January 5, 2012, to 17495 Boca Vista Rd Apt 6, Punta Gorda, FL 33955. Synchrony's records indicate that Mr. Nelson enrolled in e-bill for the Walmart Account on January 12, 2012 so that subsequent Statement notices were sent to his email address provided of ben-------@hotmail.com (redacted). Synchrony has no record of any mail being returned as undeliverable for the Walmart Account.

18. Purchases were charged to the Walmart Account on various dates, and payments were posted to the Walmart Account. Attached hereto as **Exhibit 7** is a true and correct copy of the relevant Statements.

19. Synchrony's records reflect that the last payment posted to the Walmart Account was on April 19, 2016. The Statement reflecting the last payment on the Walmart Account is attached hereto as **Exhibit 8.**

20. The Walmart Account balance of $755.19 was still outstanding as of a statement sent on or around January 5, 2017. At the time of the January 2017 statement, the Walmart Agreement was still the effective agreement governing the Walmart Account.

21.    As part of Synchrony's regular activities in the ordinary course of business, Synchrony maintains a record of any correspondence received from its customers, including requests to reject or opt out of an arbitration provision. I have reviewed Synchrony's records and have found no record of a notice from Mr. Nelson exercising his right to reject the "Arbitration Provision" in the Walmart Agreement.

22.    Synchrony also has a credit card program affiliated with American Eagle Outfitters ("AEO") Stores. Under the AEO Program, Synchrony issues AEO-branded credit card accounts. This program allows a consumer to pay for goods and services using a branded credit card. I have personally reviewed Synchrony's records pertaining to Plaintiff Benjamin Nelson and found that he was the accountholder for the AEO-branded account ending 8613 (the "AEO Account") issued by Synchrony. My statements in this declaration regarding the AEO Account are based on my personal review of these business records.

23.    Synchrony's records reflect that on November 15, 2014, an application for an AEO-branded credit card was submitted at the American Eagle Outfitters store at Edison Mall in Fort Myers, FL, in the name of Benjamin Nelson. On the same day, Synchrony approved the application, which is reflected in the "AEO Application Profile", of which a true and correct copy is attached as **Exhibit**

7

9 (redacted to protect Nelson's personal information). The account number assigned to the AEO Account was XXXXXXXXXXXX8613.

24. An AEO-branded credit card and a copy of the complete AEO Credit Card Account Agreement (the "AEO Agreement") were mailed to Mr. Nelson at the address provided on the application of 30209 Balsam Blvd, Punta Gorda, FL 33982. A true and correct copy of the AEO Agreement is attached as **Exhibit 10**. Synchrony has no record of any postal returns on the AEO Account.

25. Mr. Nelson's first Statement was sent via United States mail on or around December 9, 2014, to 30209 Balsam Blvd, Punta Gorda, FL 33982. Subsequent Statement notices were also sent via United States mail to this address. Synchrony has no record of any mail being returned as undeliverable for the AEO Account.

26. Purchases were charged to the AEO Account on various dates, and payments were posted to the AEO Account. Attached hereto as **Exhibit 11** is a true and correct copy of the relevant Statements.

27. Synchrony's records reflect that the last payment posted to the AEO Account was on November 10, 2015. The Statement reflecting the last payment on the AEO Account is attached hereto as **Exhibit 12.**

28.     The AEO Account balance of $202.58 was paid in full on November 10, 2015. At the time of payment, the AEO Agreement was still the effective agreement governing the AEO Account.

29.     As part of Synchrony's regular activities in the ordinary course of business, Synchrony maintains a record of any correspondence received from its customers, including requests to reject or opt out of an arbitration provision. I have reviewed Synchrony's records and have found no record of a notice from Mr. Nelson exercising his right to reject the "Arbitration Provision" in the AEO Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 14th day of September, 2017, at MORRIAM, KANSAS.

_____
**MARTHA KOEHLER**