```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

BENJAMIN NELSON,

        Plaintiff,

v.                            Case No:   2:16-cv-703-FtM-99MRM

SYNCHRONY BANK,

        Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Compel Arbitration and for Dismissal, or in the Alternative Stay (Doc. #22) filed on September 14, 2017. Plaintiff filed a Response in Opposition (Doc. #25) on October 9, 2017. For the reasons set forth below, the Motion is denied.

**I.**

On September 16, 2016, plaintiff Benjamin Nelson (plaintiff or Nelson) filed a two-count Complaint (Doc. #1) against defendant Synchrony Bank[1] (defendant or Synchrony), alleging claims and seeking damages under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., and the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55 et seq. The Complaint alleges that from November 2015 through February 2016,

---

[1] Synchrony Bank is a federal savings association that, among other things, issues credit card accounts to consumers. (Doc. #22-2, ¶ 2.)

Synchrony called plaintiff's cellphone an average of three times a day in an effort to collect unpaid credit card debt. (Doc. #1, ¶¶ 19-20.)  Defendant used an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice to make some or all of the calls.  (Id. ¶ 21.)  In November 2015, plaintiff received one of these calls from defendant, held on the line to speak with a live/agent or representative, and informed them that the calls were harassing, to immediately cease the phone calls, and that he was revoking any "previously perceived express consent" to receive calls from the auto-dialer.  (Id. ¶¶ 25-26.)  Each phone call received after this conversation was placed without plaintiff's express consent.  (Id. ¶¶ 27-28.)  This conduct, plaintiff asserts, violates the TCPA's prohibition on placing non-emergency telephone calls using an ATDS or a prerecorded or artificial voice without having the express consent of the party called, and constitutes harassing behavior in violation of Section 559.72(7) of the FCCPA.  (Id. ¶¶ 52, 55.)

Defendant now seeks to enforce an arbitration provision governed by the Federal Arbitration Act (FAA) contained within the credit card agreements and dismiss the Complaint, or to stay the case and compel arbitration.  In response, plaintiff does not dispute the substance of the arbitration provision, assert defects in its formation, or challenge its validity; nor does plaintiff challenge that his claims would fall within the agreement to

arbitrate. Instead, plaintiff argues that the arbitration demand is untimely and challenges defendant's right to arbitration based upon waiver, stating that defendant has engaged in motion practice, litigation, and discovery.

**II.**

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1367 (11th Cir. 2005). As a consequence, the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." <u>Volt Info. Scis., Inc. v. Bd. of Trs.</u>, 489 U.S. 468, 478 (1989). Despite the strong policy in favor of arbitration, a party may, but its conduct, waive its right to arbitration. <u>S & H Contractors, Inc. v. A.J. Taft Coal Co.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990). To determine whether a party has waived its right to arbitrate, this Court applies a two-part test: "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right," such as by "substantially invok[ing] the litigation machinery prior to demanding arbitration." <u>Garcia v. Wachovia Corp.</u>, 699 F.3d 1273, 1277 (11th Cir. 2012) (citations omitted). Second, the Court examines whether those inconsistent actions by the movant have "in some way prejudiced the other

party," based on such factors as "the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." Id. (citations omitted).

As to the first part of the waiver test, a party acts "inconsistently with its right to arbitrate where its conduct - including participation in litigation - manifests an intent to avoid or to waive arbitration." Citibank, N.A. v. Stok & Assocs., P.A., 387 F. App'x 921, 924 (11th Cir. 2010) (citation omitted). "Waiver of arbitration is not to be lightly inferred." Wilson v. Par Builders II, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995) (citation omitted). Therefore, participation in litigation must be substantial in order for it to constitute a waiver of the right to arbitrate. Citibank, N.A., 387 F. App'x at 924; see also Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995).

As to the second part of the waiver test, the Court determines prejudice by considering "the length of delay in demanding arbitration and the expense incurred by [the opposing] party from participating in the litigation process." S & H Contractors, 906 F.2d at 1514 (citation omitted).

Finally, "[t]he burden of proving waiver rests with the party seeking to prove waiver." Info. & Display Sys., L.L.C. v. Auto-Ref, Inc., No. 3:05-cv-1135-J-33TEM, 2006 WL 2850109 (M.D. Fla.

Oct. 3, 2006) (citation omitted). Because federal law favors arbitration, this burden is a heavy one. Citibank, N.A., 387 F. App'x at 923.

### III.

With regard to the first part of the test, plaintiff asserts that the defendant acted inconsistently with its arbitration right by answering plaintiff's Complaint, participating in a case management meeting in late 2016, moving for a stay of the case pending an appellate ruling, and engaging in merits discovery – all before filing its Motion to Compel Arbitration. Indeed, a Case Management and Scheduling Order was entered in this case on March 8, 2017, with an October 19, 2017 discovery deadline (Doc. #21). Although Synchrony's Motion states that it has only provided responses to discovery requests and that it has not propounded any discovery on plaintiff (Doc. #22, pp. 22-23), plaintiff's Response points out that contemporaneous with the filing of the Motion to Compel Arbitration, Synchrony propounded written interrogatories, requests for admission, requests for production, and subsequently noticed plaintiff's deposition. (Doc. #25, p. 3.) And the parties filed a Joint Motion to Amend the Scheduling Order on October 18, 2017, which states: "the parties have been engaged in discovery and exchanged documents and information in a good faith efforts to reach a resolution of this matter." (Doc. #26, ¶ 5.)

The Court agrees with plaintiff that under the totality of the circumstances Synchrony has acted inconsistently with its arbitration right. Synchrony waited one year from the filing of this action to move to compel arbitration, participating in a case management conference during which the prospect of arbitration was never raised, according to plaintiff. Defendant also responded to plaintiff's discovery requests and propounded its own. Synchrony's statement that it has only acted to comply with the Court-ordered deadlines in hopes of resolving this matter quickly does not compel a different result. (Doc. #22, p. 2.) If Synchrony wanted to act consistently with its arbitration right it could have sought a stay of its obligation to respond to plaintiff's discovery long ago while it moved to compel arbitration. Instead, defendant responded to plaintiff's discovery requests and represented to the Court that it has engaged in discovery. (Doc. #26, ¶ 5.) Moreover, and further inconsistent with its arbitration right, on January 11, 2017, defendant attempted to stay these proceedings, not to assert its arbitration right, but because a final order of the Federal Communications Commission was on appeal.[2] (Doc. #19.)

The Court notes that defendant filed an Answer and Affirmative Defenses and included a reservation of the right to compel

---

[2] The Court denied the Motion to Stay pending the FCC's ruling. (Doc. #20.)

arbitration pursuant to the terms and conditions of the account agreements.  (Doc. #8, p. 8, ¶ 4.)  But this is only one factor the Court considers in examining the totality of the circumstances to determine whether waiver occurred.  This fact does not outweigh the other circumstances of this case that support waiver as outlined above.

With regard to the second factor, the Court finds that plaintiff would suffer substantial prejudice if arbitration was compelled at this point in the case.  This case was filed a year ago, discovery closes this week and plaintiff has been engaging in discovery, unaware as to whether defendant would seek to compel arbitration.  "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." <u>Morewitz</u>, 62 F.3d at 1366.  Plaintiff has undoubtedly expended sums of money to litigate this case.  Furthermore, while it is unclear if plaintiff has responded to Synchrony's discovery requests served contemporaneously with the instant Motion, Synchrony is seeking to benefit from conducting discovery, further inconsistent with its arbitration right, with prejudice inuring to the plaintiff.[3]

---

[3] The Court has reviewed the entirety of two of the credit card agreements, and it is worth noting that the terms of the agreements do not include any language to the effect that a party who participates in litigation would not waive a right to demand

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Compel Arbitration and for Dismissal, or in the Alternative Stay (Doc. #22) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __20th__ day of October, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

arbitration. (Doc. #22-4, p. 2; Doc. #22-12, p. 4.) The agreements merely state that notice can be given after the beginning of a lawsuit or in the papers filed in the lawsuit, but otherwise include no language as to how late in the litigation this may occur. (Id.) See Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 843 (11th Cir. 2011) ("The FAA requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.").